IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MELISSA STOCKTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 06-CV-357-GKF-PJC |
| | ) |
| HOUSECALLS HOME HEALTH | ) |
| SERVICES, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**O R D E R**

Before the Court for determination is *Defendants' Motion to Quash/Modify Subpoena, or in the Alternative for Protective Order, and for Expedited Hearing* ("Defendants' Motion to Quash"). [Dkt. ## 76 & 79], and *Plaintiff's Second Motion to Compel* [Dkt. #86].

The Motion to Quash concerns a subpoena served on Teresa M. Burkett ("Burkett") on May 4, 2007, for a deposition to be held on May 10. At all times relevant hereto, Burkett was a lawyer in the law firm representing the Defendants herein. The Court stayed the May 10 deposition pending briefing and a hearing on the questions presented. A hearing was held on May 31, 2007, and the Plaintiff afforded an opportunity to file a sur-response limited to new evidence and argument contained in Defendants' Reply brief.

The Motion to Compel primarily concerns questions that Plaintiff's counsel posed to witnesses at their depositions but which they refused to answer either on privilege grounds or another basis.

# I
# BACKGROUND

Plaintiff Melissa Stockton ("Stockton") alleges that in December 2004 she reported allegations of sexual harassment made by two female employees against Defendant Derek Apple ("Apple"), CEO and co-owner of Defendant corporations. Plaintiff alleges that thereafter Defendants retaliated against her for reporting the harassment complaints. Plaintiff has alleged retaliation in violation of 42 U.S.C. §2000e, a so-called *Burk*[1] claim for termination in violation of Oklahoma public policy, tortious interference with contract, intentional infliction of emotional distress, violation of the Fair Labor Standards Act and sexual harassment (hostile work environment).

In December 2004, Plaintiff was a manager for Defendant corporations when she sent a memo to Steve Money ("Money"), an owner of the Defendant companies, informing Money that two female employees had made allegations of sexual harassment against Apple, the companies' CEO. Money contacted Burkett, an attorney who had represented one or both Defendant companies in previous matters, and asked her to immediately undertake an independent investigation of the allegations raised by Stockton "and to provide him, on behalf of AllCare Health Systems, Inc. ["AllCare"] and HouseCalls Home Health Services, Inc. ["HouseCalls"], with [her] legal opinion and advice relating thereto." [Affidavit of Teresa M. Burkett, ¶ 5, Exh. "A" to Defendants'

---

[1] *Burk v. K-Mart*, 770 P.2d 24 (Okl. 1989).

Reply]. Burkett interviewed various witnesses at the companies and reported to Money the results of her investigation. [*Id.* at ¶¶ 6-8].

Money has testified that after Burkett's report of her investigation he concluded that Apple was not guilty of sexual harassment. [Money dep., p. 84, lines 12-19, Exh. "A" to Plaintiff's Response]. Money testified that he felt Stockton's memo was "a total setup and disingenuous" and that Stockton's goal "was not really to deal with sexual harassment. I felt like her goal was to topple Derek, if you will." [Money dep. P. 138, lines 7-12].

On May 4, 2007, Plaintiff served a subpoena duces tecum on Burkett commanding her to appear for deposition and requesting the following documents:

1. All materials, files, witness statements, tape recordings, (both audio and visual) e-mails, records, summaries, findings, and/or other such documents or records prepared by you and/or received by you in connection with the investigation of the alleged sexual harassment by Defendant Derek Apple on behalf of the Defendants above-named or any of them.

2. Contracts, memoranda, billing records, billing invoices, letters, e-mails, and/or any other documents or records evidencing the following: (a) the agreement under which your investigation was conducted, (b) all charges in connection with your investigation, and, (c) written instructions, if any, regarding the extent and scope of your investigation described in 1 above.

Exhibit "A" to Subpoena Duces Tecum for Deposition, attached to Defendants' Motion to Quash.

Defendants contend that the subpoena should be quashed because Burkett's report to Money and her conversations with employees of the Defendant companies are protected by the Attorney-Client privilege, and that Plaintiff has not shown that the privilege does not apply or has been waived. Furthermore, Defendants contend that

3

before Plaintiff can take the deposition of opposing counsel she must meet all of the criteria set forth in *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (adopted by the Tenth Circuit in *Boughton v. Cotter Corp.*, 65 F.3d 823 (10th Cir. 1995)). In the alternative, Defendants ask the Court to limit the scope of any discovery from Burkett.

Plaintiff responds that Burkett's investigation is not privileged and that, in any event, any applicable privilege has been waived. Plaintiff contends Defendants put the Burkett investigation at issue and thereby waived the privilege by asserting as an affirmative defense that "Plaintiff's claims may be barred, in whole or in part, because [Defendant] exercised reasonable care to avoid harassment or discrimination and to eliminate it when and if it might occur." *Defendant AllCare's Answer*, Affirmative Defenses ¶7, Dkt. # 21[2] (hereafter referred to as "Affirmative Defense No. 7").

At the depositions of Money, Apple, and Kathy Apple, the witnesses refused to answer certain questions on grounds of attorney-client privilege. Most of these questions concerned Burkett's investigation.

## II
## APPLICABLE LEGAL STANDARD

Fed. R. Civ. P. 26(b)(1) permits discovery regarding any matter, not privileged, that is at least reasonably calculated to lead to discovery of admissible evidence. Discovery is intended to advance the search for the truth. *Taylor v. Williams*, 484 U.S. 400, 430 (1988). Federal courts have held that the scope of discovery is to be broadly construed. *Harris v. Nelson*, 394 U.S. 286, 297 (1969); *Trujillo v. Bd. of Educ. of the*

---

[2] The same Affirmative Defense was asserted on behalf of Defendant HouseCalls, *see*, *Defendant HouseCalls Answer* ¶ 7, Dkt. #24.

4

*Albuquerque Public Schools*, 2007 WL 1306593 (D.N.M.). *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004). A party seeking to fend off discovery on grounds of privilege must make a clear showing that the privilege applies. *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999) (attorney-client privilege). *See also Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984) (work-product). Applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document. *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984).

In federal question cases the applicability of attorney-client privilege is a question of federal common law.[3] *In re Qwest Communications Intern., Inc.*, 450 F.3d 1179, 1184 (10th Cir. 2006); Fed. R. Evid. 501. Principles of work-product protection are set forth in *Hickman v. Taylor*, 329 U.S. 495 (1947) and have been codified in Fed. R. Civ. P. 26(b)(3).

The party asserting privilege or work-product protection has the burden of establishing a basis for his claim. *In re Foster*, *supra* (attorney-client privilege); *Barclaysamerican Corp.*, *supra* (work-product). To establish attorney-client privilege, the proponent must show: (1) a communication; (2) made between privileged persons; (3) in confidence; (4) for the purpose of seeking, obtaining, or providing legal assistance to the client. Restatement (Third) of Law Governing Lawyers § 68 (2007). To claim work-product protection the movant must establish that the materials sought are (1) documents and tangible things otherwise discoverable; (2) prepared in anticipation of litigation or for

---

[3] Because this is a non-diversity case, Plaintiff has incorrectly begun her analysis with Oklahoma state court decisions. *See*, Plaintiff's Response, p. 3. In this instance, the error is of little consequence because federal common law is generally consistent with Oklahoma law.

trial; (3) by or for another party or by or for that other party's representative. Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 499-500 (1947).[4]

If the movant is successful, the party seeking the discovery must then establish that privilege/work-product does not apply, has been waived or that grounds exist for production in spite of privilege or work-product protection. *In re Perrigo Co.*, 128, F.3d 430, 440 (6th Cir. 1997).

Depending on its resolution of the privilege issues presented herein, the Court may then have to determine the propriety under Fed. R. Civ. P. 26(c) of Plaintiff's move to depose Burkett, a lawyer for the Defendants. The Tenth Circuit has held that depositions of opposing counsel should be limited to those circumstances where the party seeking the deposition can establish that (1) no other means exist to obtain the information other than to depose opposing counsel; (2) the information is relevant and nonprivileged; and, (3) the information is crucial to the preparation of the case. *Shelton*, 805 F.2d at 1327; *Boughton*, 65 F.3d at 829; *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1112 n. 15 (recognizing that "*Shelton* was adopted by this court in *Boughton*.").

### III
### DISCUSSION

**A.    Defendants' Motion to Quash**

**1. Plaintiff Has Established the Elements of Attorney-Client Privilege.**

In support of their claim of attorney-client privilege with regard to the Burkett investigation, Defendants have submitted Burkett's affidavit. Burkett's affidavit states:

---

[4]    Defendants conceded at the May 31, hearing that there is no record evidence that Burkett's investigation was conducted in anticipation of litigation.

    4.       On or about December 12, 2004, I was contacted by Steve Money, owner of AllCare Health Systems and its six affiliated companies, including HouseCalls Home Health Systems, Inc. I had previously represented one or more of these companies in various matters. No one else was a party to this communication from my end.

    5.       Mr. Money requested that I immediately commence an independent investigation of the complaints raised in a memo he had received from Melissa Stockton, and to provide him, on behalf of AllCare and HomeCalls, with my legal opinion and advice relating thereto.

(Burkett Affidavit, Exh. "A" to Defendants Reply, Dkt. # 91).

Burkett's affidavit establishes all necessary elements for attorney-client privilege: (1) a communication (2) between a client and attorney, (3) in confidence, (4) for the purpose of securing or providing legal advice. Defendants have established that the communications between Burkett and Money, as well as between Burkett and employees of the Defendant companies, are subject to attorney-client privilege.

**2.  Have Defendants Waived the Privilege?**

**(i) Elements of Waiver**

The attorney-client privilege can be waived by affirmative reliance on privileged material. *See*, *generally*, Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, pp. 343-47 (ABA 4th ed.) (hereafter, "Epstein"). This includes situations in which a party relies upon an investigation conducted by its attorney. *Id.* at 362-63. *See*, *for example*, *Brownell v. Roadway Package Sys.*, 185 F.R.D. 19, 25 (N.D.N.Y. 1999) (defendant waived privilege by asserting the adequacy of its investigation as a defense to sexual harassment claim). *See*, *generally*, Merrily S. Archer, "Attorney-Client Privilege and Work Product Protection in an Internal Sexual Harassment Investigation," 30-OCT Colo. Law. 141 (2001). In this case, Plaintiff contends that Defendants have waived attorney-client privilege, citing Affirmative

7

Defense No. 7 asserted by Defendants AllCare and Home Calls. This defense asserts that Stockton's claims may be barred because defendants "used reasonable care" to avoid harassment and "eliminate it when and if it might occur."[5] If Defendants rely on the Burkett investigation as part of the defense herein, then attorney-client privilege is waived. However, the fact that an attorney investigates a claim and reports to a corporate client does not waive privilege where "no actual defense of reliance on the attorney's recommendations or findings is made as a basis of the defense against the claim." Epstein at 362-63.

      **(ii)    Application of Waiver Doctrine to This Case**

After reviewing the pleadings herein, various deposition excerpts, and statements of counsel, the Court concludes that Defendants have relied on the Burkett investigation as part of their defense. In Affirmative Defense No. 7 the corporate Defendants have asserted a defense tied to Burkett's investigation. Defendants now argue, however, that although it was asserted in good faith, this defense is not viable and, therefore, there has been no waiver of attorney-client privilege. There are two problems with this argument. First, the pleadings, as presently framed, present the Burkett investigation as part of an affirmative defense asserted by Defendants HouseCalls and AllCare. Thus, given the parameters of the pleadings and the broad scope of discovery under Rule 26, the Burkett investigation is clearly relevant to the claims and defenses as presented.

Second, the Court is not convinced that Affirmative Defense No. 7 is not relevant to Stockton's claims. Defendants argue that they cannot rely on this affirmative defense because Burkett's investigation did not concern claims made by Stockton – *i.e.*, Stockton

---

[5] At the hearing held May 31, 2007, counsel admitted that Affirmative Defense No. 7 related to Burkett's investigation of sexual harassment.

8

"never reported that she had been the victim of sexual harassment or a hostile work environment." (Defendants' Reply at p. 5). Under this view, Burkett's investigation could only be a defense to the claims asserted in Stockton's memo of December 13, 2004, and – in Defendants' view – this memo only concerns the sexual harassment claims of two unnamed employees. The Court disagrees. Defendants read Stockton's memo and the allegations asserted therein too narrowly. Stockton's memo specifically refers to allegations of harassment by two unnamed female employees, but the memo does not stop there. Stockton says that the two complainants were "not the only two" subjected to unwanted sexual advance. (Defendants' Reply, Dkt. #91, Exh. "C", p. 2). The memo also states that employees are afraid of reporting sexual harassment for fear of reprisal.

> As a company you have allowed an environment of fear and intimidation to be setup, which allows situations like this to occur….I want my employees to feel like they can report behavior like this without fear of losing their job.

*Id.*

This indicates a broader complaint of hostile work environment – a claim that Stockton has asserted in her Sixth Cause of Action. (Complaint, pp. 10-11, Dkt. 2). Although Plaintiff asserts therein that she "was not herself an object of the sexual harassment," she claims that she was, nonetheless, a victim of an environment created by "rampant and ongoing" sexual harassment of female employees. (*Id.*, p. 10). Stockton's memo to Money clearly goes beyond the two anonymous complaints she brings to his attention and alleges a hostile work environment for female employees. Burkett's investigation is certainly relevant as it relates to Plaintiff's hostile work environment claim.

9

Furthermore, the Burkett investigation also relates to defense of Stockton's retaliation claim. Money has testified that on the basis of Burkett's investigation he concluded that the allegations brought to his attention in Stockton's memo were bogus and, further, he decided that Stockton was "out to get" Apple. This certainly indicates a potential defense to Stockton's claim that she was retaliated against for bringing the harassment complaint to Money's attention. Under these circumstances, the Court concludes that the attorney-client privilege has been waived and discovery regarding the Burkett investigation is appropriate.

**3.     Plaintiff Has Failed to Meet the *Shelton* Test to Depose Burkett**

The Court must now consider whether waiver of attorney-client privilege in this context necessarily means that Plaintiff may depose opposing counsel. Plaintiff has subpoenaed Burkett for deposition. At all times relevant hereto, Burkett was a member of the law firm representing the Defendants herein. The Tenth Circuit Court of Appeals has taken a restrictive view of when it is appropriate to depose one's opposing counsel. In *Boughton*, *supra*, the Court adopted the three-part test articulated in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). Defendants urge that under the holdings of *Boughton* and *Shelton*, the Court may issue a protective order against deposition of opposing counsel when the party seeking the deposition fails to meet *any* of the three criteria set out in *Shelton*. It is curious that although this was the chief argument in Defendants' Motion to Quash, Plaintiff has not addressed *Boughton*, *Shelton* or any of the

10

Defendants' arguments in this regard.[6]

In *Shelton*, plaintiffs brought claims of strict liability, negligence and failure to warn against an auto manufacturer when their child was killed in a rollover accident. *Id.* at 1324. Defendant's counsel was deposed to determine if he had documents concerning testing done on the vehicle. *Id.* at 1327. The attorney-witness refused to answer many questions based on the attorney-client privilege and work-product doctrine, but offered to produce other non-lawyer witnesses to answer these questions. The Eighth Circuit held that requiring defense counsel to answer questions regarding the existence of certain documents would require her to reveal her "mental selective process" which was protected work product. *Id.* at 1329. However, in addressing the issue the Court noted the problems inherent in deposing the opposing lawyer:

> Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.

*Id.* at 1327. Thus, in light of the circumstances before it, the court limited such depositions to those situations where the party requesting the deposition establishes the following:

---

6   Some federal courts have rejected, *e.g. In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 n.4 (2d Cir. 2003), or narrowly construed the application of *Shelton*. *See*, *United States v. Philip Morris*, 209 F.R.D. 13 (D.C.D.C. 2002). However, the Tenth Circuit has reiterated its adoption of the *Shelton* criteria. *Thiessen*, 267 F.3d at 1112 n.15.

11

> (1) that no other means exist to obtain the information than to depose opposing counsel, (2) that the information sought is relevant and nonprivileged; and (3) that the information is crucial to the preparation of the case.

*Id.* (citation omitted).

Pursuant to *Boughton* and *Shelton* a Court may, under Fed. R. Civ. P. 26(c), protect counsel from abuse of the discovery process. *Id.* Thus, it is Plaintiff's burden to establish each of the *Shelton* criteria, and the trial court "has the *discretion* under Rule 26(c) to issue a protective order against the deposition of opposing counsel when any one or more of the three *Shelton* criteria for deposition listed above are *not* met." *Boughton*, 65 F.3d at 830 (emphasis in original).

In this case, Stockton has met two of the three criteria. She has established that information regarding Burkett's investigation is both relevant and nonprivileged and that the information sought is crucial to Plaintiff's preparation of the case: Stockton cannot prepare to meet Money's assertion that Burkett's investigation convinced him that there was no truth to the underlying allegations of sexual harassment and that Stockton was out to get Derek Apple unless she has access to what Burkett reported to Money. However, Stockton has not established that she has no other means to secure information regarding the Burkett investigation. Stockton has argued that she must depose Burkett because attempts to get the information through depositions of other witnesses such as Money or Apple have been met with claims of privilege. Given the Court's ruling herein, however, there is no longer a basis for these witnesses to claim attorney-client privilege in this regard. Thus, Plaintiff has other means to obtain this information than deposing Burkett. Accordingly, Plaintiff has failed to meet the first prong of the *Shelton* test and the Motion to Quash is hereby **GRANTED** with respect to deposition of Burkett.

### B.      Plaintiff's Second Motion to Compel

Plaintiff has filed a combined Brief in Opposition to Defendants' Motion to Quash and a Brief in Support of Her Second Motion to Compel [Dkt. # 89].

### 1. Proposition I

It appears that Proposition I of the combined brief is the response to Defendants' Motion to Quash, while Propositions II through VIII constitute the Brief in Support of her Second Motion to Compel, and the Court will address them this way.

### 2. Proposition II

This proposition concerns a claim of spousal privilege asserted by Kathy Apple at her deposition. Defendants have withdrawn any objection to deposition questions based on spousal privilege. Accordingly, the Second Motion to Compel is **GRANTED** with respect to this issue. Kathy Apple will be required to answer questions without asserting spousal privilege.

### 3. Proposition III

This proposition concerns questions posed to Money at his deposition. Defendants have identified the various questions as "Dispute No. –" and the Court will adopt this format in addressing the questions.

#### (i) Dispute No. 1.

At the deposition, Plaintiff asked Money if he had a *present* memory of communicating with Stockton regarding sexual harassment in the week of December 13, 2004. Money responded that he was "sure I did." This is not responsive to the question which concerned present memory. Plaintiff's Motion is **GRANTED**. Money should answer whether he recalls now having had such communication with Stockton.

13

**(ii) Dispute No. 2.**

Plaintiff asked Money whether he had a present memory of his first communication with Stockton about the sexual harassment allegations. (p. 27, l. 18 – p. 28, l. 1)[7]  Money answered this question, stating "I don't recall my first communication with her." (p.26, l. 9-12).  Plaintiff's Motion is **DENIED**.

**(iii) Dispute Nos. 3, 8, 23.**

Money claimed attorney-client privilege as to his discussions with Burkett.  The Court has found the privilege waived; therefore, Plaintiff's Motion is **GRANTED**.

**(iv) Dispute Nos. 4 & 5.**

Asked and answered.  Money testified he did not recall personally taking any action after receiving Burkett's report.  (p. 40, line 9).  Plaintiff's Motion is **DENIED**.

**(v) Dispute No. 6.**

Asked and answered. (p. 42, l. 11-21; p. 43, l. 17-25.  Plaintiff's Motion is **DENIED**.

**(vi) Dispute No. 7:**

Asked and answered.  (p. 31, l. 5-9).  Plaintiff's Motion is **DENIED**.

**(vii) Dispute No. 9.**

Asked and answered.  Money testified that he believed the company Policies and Procedures covered sexual harassment (p. 63, l. 10-16) and that the company compliance officer was responsible for ensuring compliance with the company's policies and procedures. (p. 57, l. 1-2).  Plaintiff's Motion is **DENIED**.

---

[7]  References are to page and line numbers of the deposition.

14

**(viii) Dispute No. 10.**

Asked and answered.  (See Dispute No. 9).  Plaintiff's Motion is **DENIED**.

**(ix) Dispute No. 11.**

Improper hypothetical.  Plaintiff's Motion is **DENIED**

**(x) Dispute No. 12.**

Asked and answered.  (p. 101, l. 17-23).  Plaintiff's Motion is **DENIED**.

**(xi) Dispute No. 13.**

Plaintiff's Motion is **GRANTED**.

**(xii) Dispute No. 14.**

Plaintiff's Motion is **GRANTED**.

**(xiii) Dispute No. 15.**

Asked and answered. (p. 55, l. 16-21).  Plaintiff's Motion is **DENIED**.

**(xiv) Dispute No. 16.**

Plaintiff's motion is **DENIED** based on confidentiality of settlement negotiations and lack of relevance to the claims/defenses herein.

**(xv) Dispute Nos. 17 & 18.**

Asked and answered. (p. 140, l. 7-8).  Plaintiff's Motion is **DENIED**.

**(xvi) Dispute No. 19.**

Asked and answered.  p. 142, l. 8-11).  Plaintiff's Motion is **DENIED**.

**(xvii) Dispute No. 20.**

Asked and answered. (p. 145, l. 4- 6; p. 145, l. 21 through p. 147, l. 11).

Plaintiff's Motion is **DENIED**.

**(xviii) Dispute No. 21.**

Asked and answered. (p. 156, l. 18-25).  Plaintiff's Motion is **DENIED.**

**(xix) Dispute No. 22.**

Plaintiff's Motion is **GRANTED.**  Money must answer as to the number of people attending the meeting.

**(xx) Dispute No. 24.**

Asked and answered.  (p. 180, l. 12-18).  Plaintiff's Motion is **DENIED**.

**(xxi) Dispute No. 25.**

Asked and answered.  (p. 182, l. 3-7).  Plaintiff's Motion is **DENIED**.

**(xxii) Dispute No. 26.**

Plaintiff's Motion is **GRANTED**.  Money must answer who he recalls suggesting that Stockton leaked information about the Burkett investigation.

**(xxiii) Dispute No. 27.**

Asked and answered. (p. 242, l. 9-13).  Plaintiff's Motion is **DENIED**.

**(xxiv) Dispute No. 28.**

Asked and answered.  (p. 246, l. 1-4)  Plaintiff's Motion is **DENIED.**

**(xxv) Dispute No. 29.**

Asked and answered.  (p. 249, l. 5-11).  Plaintiff's Motion is **DENIED**

**(xxvi) Dispute No. 30.**

Asked and answered. (p. 244, l. 16-25; p. 245, l. 1-2).  Plaintiff's Motion is **DENIED**.

**(xxvii) Dispute No. 31.**

Asked and answered. (p. 261, l. 18-25; p. 263, l. 1-2). Plaintiff's Motion is **DENIED.**

**(xxviii) Dispute No. 32.**

Plaintiff's Motion is **GRANTED**.

**4. Proposition IV.**

Proposition IV concerns questions asked of Apple. The Court has ruled that attorney-client privilege has been waived. Apple must answer those questions where he asserted attorney-client privilege. Apple must also answer when he became aware that part of the sexual harassment allegation involved Andrea Hopper. **GRANTED**.

**5. Proposition V.**

Proposition involves 11 questions asked of Kathy Apple. Kathy Apple asserted husband-wife privilege in refusing to answer Nos. 1-9. That objection has now been withdrawn and Apple must answer these questions. Apple refused to answer questions 10 and 11 on attorney-client privilege. The court has ruled this privilege was waived. Apple must answer these questions as well. **GRANTED**.

**6 & 7. Propositions VI and VII.**

Propsitions VI and VII concern written discovery responses that Plaintiff contends either were not answered at all or were answered incompletely. By June 25, 2007, Defendants HouseCalls and AllCare are to respond to the discovery which was served on or about March 1, 2007. By June 25, 2007, Defendants are to supplement their discovery responses in accordance with the Court's ruling on attorney-client privilege and other issues. **GRANTED**.

**8. Proposition VIII.**

Proposition VIII involves Defendants' privilege log. Defendants are to review this log in accordance with the Court's rulings herein and amend the log accordingly. Any remaining issues involving the privilege log shall be submitted to the Court with specific argument as to each particular challenged document. **DENIED without prejudice.**

DATED this 15th day of June 2007.

_____
Paul J. Cleary
United States Magistrate Judge